UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOHNNY SWANSON, III,

Plaintiff,

v.

UNITED STATES OF AMERICA and
BUREAU OF PRISONS,

Defendants.

CIVIL NO. 01-36 (RHK/JMM)

REPORT AND RECOMMENDATION

The above matter is before the Court on Defendants' Motion to Dismiss or for Summary Judgment. [Docket No. 45]. The matter is before the undersigned Magistrate Judge for a Report and Recommendation to District Judge Richard H. Kyle pursuant to the provisions of 28 U.S.C. §636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 45] be granted.

**FINDINGS OF FACT/REPORT**

Plaintiff alleges generally that Defendants failed to provide him with proper medical care and failed to provide suitable living conditions at FMC-Rochester. Plaintiff identifies these claims as alleging violations of the Eighth Amendment, as well as tort claims for negligence as permitted under the Federal Tort Claims Act, 28 U.S.C. §2674. Defendants move for dismissal of all claims, or in the alternative for summary judgment.

FILED SEP 12 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

## I. PLAINTIFF'S COMPLAINT

The Complaint and Amended Complaint[1] contain many general allegations of mistreatment while Plaintiff was housed at the Federal Medical Center at Rochester, Minnesota ("FMC-Rochester"). Plaintiff makes the following allegations regarding his time at FMC-Rochester:

- on "numerous occasions," Plaintiff was served food in trays containing baked-on food remains, and on "several occasions," food trays arrived at the hospital with rat droppings on top of the trays. Plaintiff notified Correctional Officers of these occurrences.

- Defendants failed to provide Plaintiff with a special menu to help control his diabetes.

- Defendants failed to provide Plaintiff with medication prescribed to him for a pancreatic condition by physicians at the Mayo Clinic.

- Physician's Assistants ("PAs") at FMC-Rochester failed to keep adequate records, so PAs who later examined Plaintiff were not aware of his complete medical history.

- Defendants did not have Plaintiff examined by a cardiologist despite knowledge of Plaintiff's heart condition.

- Defendants failed to modify Plaintiff's medication despite documentation provided by Plaintiff that indicated the medication was harmful to him.

- Defendants failed to perform necessary blood tests on Plaintiff on a regular basis, resulting in Plaintiff requiring surgery and a two-week stay in intensive care.

---

[1] Ordinarily, the Court would look only to the Amended Complaint. See Local Rule 15.1. In light of Plaintiff's *pro se* status, and his clear intent that the Amended Complaint be considered in addition to the Complaint, we will consider both documents in determining the content of Plaintiff's claims.

- Defendants refused to let Plaintiff notify his family that he was going into the hospital for a surgical procedure.
- Defendants failed to provide Plaintiff with a list of side effects for the medications prescribed to him.
- Defendants lied to Plaintiff about his medical condition, specifically by not providing accurate x-rays, and eliminating test results from his medical records.
- during construction in Building #9 at FMC-Rochester, Defendants failed to properly protect Plaintiff from exposure to asbestos.
- Defendants failed to control the levels of asbestos dust, cigarette smoke, and other pollutants at FMC-Rochester.
- Defendants failed to ensure proper temperatures required to control certain of Plaintiff's health problems, even after Plaintiff complained to the Warden, Assistant Warden, and correctional officers.
- Defendants failed to protect Plaintiff from damaging actions of other inmates, including destroying temperature gauges, blowing cigarette smoke into the ventilation system, and adjusting vents so that Plaintiff would be exposed to smoke and cold temperatures. Inmates smoked cigarettes in their own cells and in areas designated by them as "smoking rooms." Plaintiff complained about the smoke and was told that the exhaust system would remove it quickly.

Additional allegations are included in the administrative tort claim submitted by Plaintiff in January 2000, which is attached to Plaintiff's Complaint as Exhibit 7. He claims that he was not given prompt treatment for abdominal pain and vomiting, which turned out to be caused by a bowel impaction. While he was being transferred to the Mayo Clinic for treatment, he was given asthma medication which caused the left side of his body to become immobile. Plaintiff claims that his pancreas was damaged by medication administered by doctors at FMC-Rochester, because they failed to test his blood regularly

to monitor his enzyme levels.

## II. ADMINISTRATIVE TORT CLAIM PROCEDURES

"The FTCA is a limited waiver of sovereign immunity which requires compliance with the conditions enacted by Congress." Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993). "These conditions are construed narrowly . . .," id, and include the restriction a person may not bring an action in federal court for money damages resulting from the negligence of a federal employee until the claim has been presented to the appropriate federal agency in writing, and the agency has denied the claim.[2] 28 U.S.C. §2675(a). "Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." Bellecourt, 994 F.2d at 430 (citations omitted).

Plaintiff filed an administrative tort claim with the appropriate agency, *i.e.* the Bureau of Prisons ("BOP"), in early 2000. Defendants do not dispute that the claim was received by the BOP. However, Defendants argue that the Court does not have jurisdiction over several of the claims raised in this lawsuit because Plaintiff did not raise them in his claim to the BOP.

Plaintiff's administrative tort claim is attached as Exhibit 7 to his original Complaint. The administrative claim contains no mention of contaminated food trays, problems with the ambient temperature, or destruction of thermostats by other inmates. These negligence claims were not presented to the BOP, and therefore the Court does not have jurisdiction to hear them under the FTCA. We note that this analysis applies only to

---

[2] Failure to make a final disposition within six months constitutes a denial of the claim for purposes of this requirement. 28 U.S.C. §2675(a).

Plaintiff's tort claims, and not to any Eighth Amendment claims stemming from the same events.

## III. NO RESPONDEAT SUPERIOR LIABILITY FOR CONSTITUTIONAL CLAIMS.

Title 42 U.S.C. §1983 provides the basis for civil actions alleging governmental deprivation of constitutional rights. Plaintiff seeks to hold Defendants liable through the doctrine of respondeat superior for the actions of their employees which allegedly violated Plaintiff's Eighth Amendment rights. Generally, "respondeat superior is not a basis for liability under 42 U.S.C. §1983." Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990)(citation omitted). However, a governmental entity may be held liable for an employee's violative acts when the injury is inflicted through execution of a governmental policy. Bechtel v. City of Belton, 250 F.3d 1157, 1160 (8th Cir. 2001). A "policy" is a "deliberate choice of a guiding principle or procedure" made by the official who has final authority regarding such matters. Bechtel, 250 F.3d at 1160 (citations omitted).

Plaintiff has not alleged that the United States or the BOP has a policy that favors neglect or mistreatment of inmates. Plaintiff complains about events at FMC-Rochester, but he has not identified the offensive actions allegedly committed by any specific staff members nor named them as defendants. Plaintiff's claims against Defendants are based solely on respondeat superior. Therefore, Plaintiff's Eighth Amendment claims should be dismissed for failure to state a claim upon which relief can be granted. See King v. Professional Healthcare Practitioners, 1993 WL 212466 (8th Cir. June 16, 1993)(claim founded only on respondeat superior is not cognizable under §1983)(citing Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975 (8th Cir. 1993));

Piotrowski v. City of Houston, 51 F.3d 512 (5th Cir. 1995)(dismissing §1983 claim because plaintiff alleged misconduct by certain police officers but did not allege that a causal link existed between that misconduct and a city policy or custom).

## IV. REMAINING TORT CLAIMS

As discussed above, the Court lacks jurisdiction over some of Plaintiff's tort claims because they have not been presented to the appropriate administrative agency. Plaintiff's remaining tort claims fall into two groups: (1) medical malpractice, and (2) negligence in exposing Plaintiff to environmental pollutants.

### A. Medical Malpractice Claims

Plaintiff alleges mistreatment at the hands of unidentified doctors and staff members from FMC-Rochester and the Mayo Clinic. He seeks to hold Defendants generally liable for this mistreatment.

Defendants assert that Plaintiff's medical malpractice claims should be dismissed because Plaintiff has not submitted an affidavit of medical review as required by Minnesota law. Minnesota Statutes §145.682 sets forth the circumstances under which certain affidavits must be served on defendants in order to maintain an action for medical malpractice. The statute was intended not merely as a procedural rule, but as a substantive gatekeeping mechanism. Anderson v. United States of America, 1998 WL 92460 at *2 (D. Minn. 1998). The requirements of §145.682 apply to all medical malpractice claims under Minnesota law, including claims by prisoners under the FTCA. See Bellecourt, 994 F.2d 427 (upholding dismissal with prejudice of former inmate's claim of malpractice against doctors at FMC-Rochester). See also Ellingson v. Walgreen Co.,

78 F. Supp.2d 965, 968 (D. Minn. 1999)(§145.682 sets forth a substantive rule which must be followed by federal courts)(citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

Section 145.682 provides, in pertinent part:

> Subd. 2. Requirement. In an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) unless otherwise provided in subdivision 3, paragraph (b), serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3; and (2) serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4.
>
> Subd. 3. Affidavit of expert review. The affidavit required by subdivision 2, clause (1), must be by the plaintiff's attorney and state that: (a) the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff; or (b) the expert review required by paragraph (a) could not reasonably be obtained before the action was commenced because of the applicable statute of limitations. If an affidavit is executed pursuant to this paragraph, the affidavit in paragraph (a) must be served on defendant or defendant's counsel within 90 days after service of the summons and complaint.
>
> Subd. 4. Identification of experts to be called. (a) The affidavit required by subdivision 2, clause (2), must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of the suit

> against the defendant. (b) The parties or the court for good cause shown, may by agreement, provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision. Nothing in this subdivision may be construed to prevent either party from calling additional expert witnesses or substituting other expert witnesses.
>
> . . .
>
> Subd. 5. Responsibilities of plaintiff as attorney. If the plaintiff is acting pro se, the plaintiff shall sign the affidavit or answers to interrogatories referred to in this section and is bound by those provisions as if represented by an attorney.
>
> Subd. 6. Penalty for noncompliance. Failure to comply with subdivision 2, clause (1), within 60 days after demand for the affidavit results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case. Failure to comply with subdivision 2, clause (2), and subdivision 4 results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.
>
> Subd 7. Consequences of signing affidavit. The signature of the plaintiff or the plaintiff's attorney constitutes a certification that the person has read the affidavit or answers to interrogatories, and that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry, it is true, accurate, and made in good faith. A certification made in violation of this subdivision subjects the attorney or plaintiff responsible for such conduct to reasonable attorney's fees, costs, and disbursements.

Relevant to the resolution of Defendants' Motion are the obligations imposed by subdivision 2, which requires Plaintiff to serve two Affidavits. The contents of the first Affidavit are described in subdivision 3. The Affidavit must show that Plaintiff[3] has reviewed the case with a qualified expert, who is of the opinion that Defendants committed

---

[3] These obligations run to Plaintiff, rather than Plaintiff's counsel, because Plaintiff is representing himself.

malpractice which harmed Plaintiff. Pursuant to subdivision 6, if this Affidavit is not served with the Complaint as required, Defendants may demand that it be served. If Plaintiff then fails to serve this Affidavit within sixty days after the demand, Defendants may seek dismissal. Plaintiff has not served this first Affidavit, but Defendants have not made a demand that he do so. Therefore, the question of whether dismissal is appropriate based on Plaintiff's failure to serve this first Affidavit is not before the Court.

The contents of the second Affidavit, required by subdivision 2(2), are described in subdivision 4(a). This Affidavit is to be signed by both Plaintiff and by one or more experts. Pursuant to subdivision 6, Defendants need not make a demand for this affidavit; if it is not served by Plaintiff in a timely manner, the Court must dismiss his medical malpractice claims with prejudice

The primary purpose of §145.682 is "to eliminate nuisance malpractice suits by establishing a process where affidavits of expert review are required to verify the lawsuit's validity." Oslund v. United States, 701 F. Supp. 710, 713 (D. Minn. 1988)(citation omitted). In light of that purpose, the second Affidavit is the most important, because it sets forth the basis for the claim. Sorenson v. St. Paul Ramsey Medical Center, 457 N.W.2d 188, 191 (Minn. 1990).

As noted, subd. 2(2) of the statute requires that this affidavit be "served upon the defendant within 180 days after commencement of the suit against the defendant." In federal court, actions are deemed commenced at the time of filing of the Complaint. Fed. R. Civ. P. 3. In this case, the Complaint was filed on January 8, 2001. Therefore, the affidavit required by subd. 2(2) was required to be served no later than July 9, 2001. Plaintiff has not served the affidavit at all, let alone in a timely manner.

However, Plaintiff's failure to serve the expert affidavit required by the statute does not conclusively end the Court's analysis. "There are two methods through which a plaintiff may escape dismissal for noncompliance [with §145.682]. First, the court may extend the time for serving the affidavits, even after the time limits have expired, upon a showing of excusable neglect. . . . Second, a plaintiff need not submit expert affidavits if liability may be established without expert testimony." Bellecourt v. United States, 784 F. Supp. 623, 636-37 (D. Minn. 1992)(citations omitted), aff'd, 994 F.2d 427 (8th Cir. 1993). Unless Plaintiff falls within one of these categories, his medical malpractice claims must be dismissed for failure to comply with Minn. Stat. §145.682.

Plaintiff concedes that he has not filed either of the affidavits required by §145.682, and does not suggest that his claims of improper medical treatment would not require the testimony of an expert. He asks that the Court grant him an unspecified period of additional time to file the necessary affidavits. In order for the Court to grant Plaintiff additional time for this purpose, he must demonstrate excusable neglect by satisfying four factors: "(1) plaintiff has a reasonable case on the merits; (2) plaintiff has a reasonable excuse for his failure to meet the statutory time limits; (3) plaintiff has proceeded with due diligence after notice of statutory time limits; and (4) no substantial prejudice will result to defendant by the extension of time." Bellecourt, 784 F. Supp. at 636-37 (citation omitted).

With regard to the first factor, Plaintiff has not shown that he has a reasonable case on the merits. There is no evidence in the record to support Plaintiff's general allegations of medical malpractice. Plaintiff has submitted unsworn pleadings and memoranda, but has not provided the Court with any evidence to support his claims in the form of affidavits. Neither has he provided any argument or other substantiation of the

existence of such evidence. The Complaint does not identify any individual allegedly responsible for providing sub-standard medical care to Plaintiff at either FMC-Rochester or the Mayo Clinic. Plaintiff's pleadings provide only vague allegations against unknown persons.

In contrast, Defendants have provided extensive documentation, from doctors and staff members, of Plaintiff's considerable health problems and the comprehensive care he has received while in custody. Defendants submitted Affidavits from the Associate Warden (Medical), the Clinical Director, and the Assistant Safety Manager at FMC-Rochester, as well as a large number of Plaintiff's medical records, to support their contention that Plaintiff received adequate care while he was housed at FMC-Rochester. Plaintiff has not submitted any evidence to contradict the evidence provided by Defendants. There is no indication in the record that Plaintiff has a reasonable case for medical malpractice against Defendants.

With respect to the second and third factors, there is no indication that Plaintiff has taken any steps whatsoever towards obtaining the necessary affidavits, or that he has any plan to obtain the affidavits in the future. Plaintiff asserts that he has not filed the affidavits because he requires information from his medical records, which have not been produced to him by Defendants. However, Plaintiff has not identified any medical experts who have agreed to review his records, nor any statement of what additional time is needed, nor what developments should be expected to occur during the extended period of time. Even if he were to obtain the medical records, it does not appear that the expert affidavits would be forthcoming. Plaintiff has not provided a reasonable excuse for his failure to meet the statutory time limits, nor has he shown that he has been proceeding with

due diligence. Plaintiff has also failed to substantiate that, if additional time were granted, he would be able to satisfy the requirement by providing an expert affidavit.

We also conclude that Defendants would suffer prejudice if Plaintiff were granted additional time to provide the affidavits. Some of the events complained of by Plaintiff occurred more than three and a half years ago. Plaintiff has yet to even identify the individuals who allegedly committed these acts. If the Court were to allow Plaintiff the additional time necessary to file affidavits, the lapse of time could prejudice any later-identified defendants attempting to respond to the opinions contained in a belated affidavit from Plaintiff's expert. See Bellecourt, 784 F. Supp. at 640 (lapse of time caused substantial difficulty and prejudice). Plaintiff's medical malpractice claims under the FTCA should be dismissed for failure to comply with Minn. Stat. §145.682.

Although dismissal of Plaintiff's case may seem a harsh result, it is the clear intent of the Minnesota legislature that cases be dismissed under these circumstances. "Dismissal is mandated under Minn. Stat. §145.682, subd. 6 when the disclosure requirements are not met and while we certainly recognize that the statute may have harsh results in some cases, it cuts with a sharp but clean edge. It is the legislative choice to implement the policy of eliminating frivolous medical malpractice lawsuits by dismissal." Lindberg v. Health Partners, Inc., 599 N.W.2d 572, 578 (Minn. 1999). See also Ellingson, 78 F. Supp.2d at 969.

**B. Pollutant Claims**

Plaintiff alleges that unidentified staff members at FMC-Rochester failed to control his exposure to asbestos dust and cigarette smoke. He asserts that Defendants,

as the staff members' employers, are liable for their negligence.[4]

Title 28 U.S.C. §1346(b) grants federal courts jurisdiction over claims where the United States has waived sovereign immunity, such as claims under the FTCA. Washington v. Drug Enforcement Admin., 183 F.3d 868, 873 (8th Cir. 1999). Generally, "[t]he United States is liable to the same extent that a private person under like circumstances would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Washington, 183 F.3d at 873 (citing 28 U.S.C. §1346(b)). "The 'law of the place' refers to the substantive law of the state where the wrongful conduct took place." Id. (additional citations omitted). In other words, Minnesota substantive law applies to Plaintiff's negligence claims brought pursuant to the FTCA.

Defendants argue that they are entitled to summary judgment on these claims. Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and

---

4

Defendants do not address these claims separately, but rather group them in with Plaintiff's medical malpractice claims. However, these claims stem not from complaints about Plaintiff's medical treatment, but from living conditions at FMC-Rochester.

> defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. See Fed. R. Civ. P. 56(c). To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e).

Under Minnesota law, "[a] defendant in a negligence suit is entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the negligence claim: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury." Funchess v. Cecil Newman Corp., -- N.W. --, 2001 WL 952827 at *4 (Minn. Aug. 23, 2001). An employer may be held vicariously liable for negligent acts of an employee committed in the course and scope of employment. Snilsberg v. Lake Washington Club, 614 N.W.2d 738, 745 (Minn. Ct. App. 2000)(citing Edgewater Motels, Inc. v. Gatzke, 277 N.W.2d 11, 15 (Minn. 1979)).

In support of their Motion for Summary Judgment, Defendants submitted Affidavits regarding policies at FMC-Rochester on smoking and removal of hazardous materials. According to these Affidavits, smoking indoors is prohibited at FMC-Rochester,

and smoking outdoors is only permitted in designated areas. Whenever unauthorized smoking is brought to the attention of staff, they take prompt action to rectify the problem. These Affidavits also state that all required steps were taken to ensure inmate safety during asbestos abatement at FMC-Rochester, and that no inmates reported improper exposure to asbestos during the abatement. Defendants satisfied their burden of showing that there is no genuine issue regarding these material facts.

Plaintiff did not submit any affidavits in support of his opposition to Defendants' Motion, nor did he make a request for additional time as permitted by the Federal Rules of Civil Procedure. Rule 56(f) of the Federal Rules of Civil procedure provides the method for a party to oppose a motion for summary judgment when the party is not prepared to respond. It states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In other words, "Rule 56(f) allows a party who has no specific material contradicting his adversary's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof." 10A Charles A. Wright, *et al.*, Federal Practice & Procedure § 2740 at 530 (2d ed. 1983 & Supp. 1995). "[W]hen a movant has met the initial burden required for the granting of a summary judgment, the opposing party either must establish a genuine issue for trial under Rule 56(d) or explain why he cannot yet do so under rule 56(f)." Id. at 531. Rule 56(f) requires that Plaintiff submit Affidavits that state justifiable reasons why Plaintiff could not submit the necessary opposing materials to

Defendants' Motion for Summary Judgment pursuant to Rule 56(e), and set forth the evidence which the party expects to develop.

> A party invoking [the protections of Rule 56(f)] must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required . . . and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Where, as here, a party fails to carry his burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified.

Willmar Poultry Co. v. Morton-Norwich Prods., Inc., 520 F.2d 289, 297 (8th Cir. 1975), cert. denied, 424 U.S. 915 (1976). Accord Humphreys v. Roche Biomedical Lab, Inc., 990 F.2d 1078, 1081 (8th Cir. 1993). Plaintiff has filed no Affidavit, nor requested that additional time be provided, and he has not described what evidence he would be able to provide if given additional time.

There is no evidence in the record to support Plaintiff's unsworn assertions that staff members at FMC-Rochester negligently exposed him to cigarette smoke or asbestos. From the failure of Plaintiff to submit Affidavits, the Court may also infer his "tacit acceptance of the completeness and accuracy" of the Affidavits and Exhibits filed by Defendants. Willmar Poultry, 520 F.2d at 297. Under these circumstances, no rational trier of fact could find in favor of Plaintiff on these claims. Summary judgment in favor of Defendants is appropriate. See Matsushita Elec., 475 U.S. at 586.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 45] be granted.

Dated: September 12, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **September 27, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

**Please forward this announcement to the recipient of this fax.**

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500